UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROCKLAND COUNTY and VILLAGE OF
SPRING VALLEY,

Defendants.

No. 25 Civ. 507 (CS)

**SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES AND SPRING VALLEY**

WHEREAS, Plaintiff the United States of America ("United States"), on behalf of the U.S. Department of Housing and Urban Development ("HUD") filed a complaint on January 17, 2025, against defendants Rockland County, New York ("Rockland County" or the "County") and the Village of Spring Valley, New York ("Spring Valley" or the "Village," and together with Rockland County, "Defendants"), alleging that Defendants have breached a Voluntary Compliance Agreement and Conciliation Agreement (the "VCA") with HUD, in violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act"), 42 U.S.C. §§ 3610(c) and 3614(b)(2);

WHEREAS, HUD entered into the VCA with Rockland County and Spring Valley in March 2018, and the parties to the VCA subsequently amended it in February 2021;

WHEREAS, the VCA resolved HUD's investigation of administrative complaints, without any final finding of unlawful practices, regarding, *inter alia*, the allegedly discriminatory practices of a private developer that used HUD grant funding to build 62 condominium units and who allegedly designed and marketed the relevant units in a discriminatory manner, and whether Rockland County and Spring Valley appropriately monitored those practices;

WHEREAS, the VCA required Rockland County and Spring Valley to develop or rehabilitate a total of 62 affordable housing units meeting specified criteria by deadlines set forth in the VCA, at least 22 of which were required to be located in the Village, and subject to affirmative marketing and affordability requirements, alongside other requirements;

WHEREAS, the United States and Spring Valley, desiring to settle this action and to avoid protracted, expensive, and unnecessary litigation, agree to the entry of this Settlement Agreement to resolve all claims that the United States asserted against Spring Valley in its complaint, all counterclaims against the United States that Spring Valley asserted in its answer, and all affirmative defenses that Spring Valley asserted as to the United States' claims in its answer; and

WHEREAS, the United States and Spring Valley recognize, and the Court by entering this Settlement Agreement finds, that this Settlement Agreement has been negotiated by the United States and Spring Valley in good faith and will avoid litigation among the parties hereto; that this Settlement Agreement is a fair and reasonable settlement of the claims asserted by the United States against Spring Valley, as specifically set forth in the complaint, and all counterclaims asserted by Spring Valley against the United States, as specifically set forth in its answer; and that this Settlement Agreement is fair, reasonable, and in the public interest;

NOW, THEREFORE, and with agreement of the United States and Spring Valley, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## I.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(b)(2), and personal jurisdiction over the parties to this action.

2.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants reside in this district.  For purposes of this Settlement Agreement, or any action or proceeding to enforce this Settlement Agreement, Spring Valley consents to venue in the Southern District of New York and to this Court's jurisdiction over this Settlement Agreement and over any such action or proceeding.

## II.      APPLICABILITY

3.      The obligations of this Settlement Agreement apply to and are binding upon Spring Valley and upon the United States, and all of their officers, trustees, directors, agents, employees, heirs, successors and assigns, when acting in their official capacities.

4.      These obligations are binding irrespective of changes in elected officials or other personnel, including the officials who serve as the Village's Mayor and/or members of the Village Board of Trustees during the term of this Settlement Agreement.

## III.      ADMISSIONS

5.      Spring Valley admits, acknowledges, and accepts responsibility for the following:

a.      Spring Valley knowingly and voluntarily entered into the VCA in 2018, and agreed to its amendment in 2021.

b.      The VCA included interim deadlines that required, *inter alia*, that Rockland County and Spring Valley complete approximately 25 of the affordable units within the first three years of the VCA.  However, only four affordable units meeting the requirements of the VCA were completed between 2018 and 2021, and none of those units were in the Village of Spring Valley.

3

c.      The 2021 amendment of the VCA extended the deadlines for Rockland County and Spring Valley to develop the 58 remaining affordable housing units as required under the VCA.

d.      Spring Valley did not complete any additional affordable housing units meeting the terms and criteria set forth in the VCA between the amendment of the VCA in 2021 and the filing of this action.

## IV.    REMEDIAL ACTIONS

6.      **Compliance with the Fair Housing Act.**  The Village and each of its officers, employees, agents, successors, and assigns are hereby enjoined from discriminating on the basis of race, color, religion, sex, familial status, national origin, or disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604.

7.      **Compliance with Title VI.**  The Village and each of its officers, employees, agents, successors, and assigns are hereby enjoined from excluding any person from participation in, denying any person the benefits of, or subjecting any person to discrimination on the basis of race, color, or national origin in any program receiving federal financial assistance, as prohibited by the Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. ("Title VI").

8.      **Provision of Affordable Housing Units**. Within five years of the date of entry of this Settlement Agreement, Spring Valley shall reasonably ensure the development and/or rehabilitation of at least 22 affordable housing units that meet the terms and conditions set forth in Paragraphs 8 through 10 of this Settlement Agreement ("Affordable Units") as follows:

a.      Spring Valley will reasonably ensure the development and/or rehabilitation of 22 Affordable Units for rental, which shall be affordable to and

4

occupied by households with incomes at or below 75% of the Area Median Income ("AMI") for Rockland County.  The Affordable Units for rental are subject to the rent limitations for HOME-assisted units set forth in 24 C.F.R. § 92.252(a) and (b).

b.    Each of the 22 Affordable Units that Spring Valley is responsible for developing and/or rehabilitating must be located in Spring Valley, unless otherwise agreed to by HUD.

c.    The Affordable Units will be completed pursuant to the following schedule:

    i.   By December 1, 2026, the Village will supply a list of projects that it has identified and reasonably believes will meet the requirements of this agreement.

    ii.  By December 1, 2027, the Village will supply a status report on the projects listed in the initial communication on December 1, 2026.

    iii. By December 1, 2028, the Village will ensure the completion of 13 Affordable Units for rental.

    iv.  By December 1, 2029, the Village will ensure the completion of 5 additional Affordable Units for rental.

    v.   By December 1, 2030, the Village will ensure the completion of 4 additional Affordable Units for rental.

d.    All Affordable Units will be subject to marketing requirements as set forth in Paragraph 9, and controlled by deed restrictions or other legal measures as set forth in Paragraph 10.

e.      All Affordable Units will be constructed or converted to be accessible to persons with disabilities in conformance with the Uniform Federal Accessibility Standards (UFAS) and/or the standards set forth in the HUD rule entitled Nondiscrimination on the Basis of Disability in Federally Assisted Programs and Activities, 79 Fed. Reg. 29,671 (May 23, 2014).

f.      HUD reserves the right to conduct periodic on-site reviews, at least annually, of projects containing Affordable Units to ensure compliance with this Settlement Agreement, at HUD's discretion.

g.      Spring Valley will hold semiannual progress meetings during construction of projects including Affordable Units, which shall include representatives from the Village and the developer/construction manager, no less than 5 days advance notice to HUD to allow representatives of HUD to participate at HUD's option.

9.    **Marketing Requirements for Affordable Units.**

a.      Before each of the projects listed in Paragraph 8 is marketed, rented, sold, or occupied, Spring Valley will submit a marketing plan ("Marketing Plan") to HUD in accordance with 24 C.F.R. §§ 92.351(a) and 92.253(d)(3), to encourage the participation of eligible persons without regard to race, color, national origin, sex, religion, familial status, or disability, with respect to each group of Affordable Units.  The Marketing Plan will include specific marketing outreach for residents of Spring Valley.  The Village may use Form HUD-935.2A to comply with this requirement.

b.      Spring Valley will provide the proposed Marketing Plan for HUD's review before commencement of marketing activities.  HUD will have a period of 30

6

days to respond, at HUD's option, and provide appropriate technical assistance and revisions to the extent warranted.

c. If HUD provides responses or objections regarding the proposed Marketing Plan within 30 days of its receipt of the proposal, and if Spring Valley and HUD have been unable to reach an agreement with respect to the proposed Marketing Plan within 30 days of HUD's response, then the parties will resolve the issue pursuant to the provisions of Section IX (Dispute Resolution and Retention of Jurisdiction).

10. **Deed Restrictions for Affordable Units.**

a. All Affordable Units subject to this Settlement Agreement shall be subject to deed restrictions or other legal measures to ensure that they remain affordable to and occupied by eligible households for at least 50 years. The deed restriction or restrictive covenant must include the affordability requirements (including AMI restrictions and the length of the term of affordability) attached to the relevant Affordable Units as set forth under Paragraph 8.

b. Before each of the projects listed in Paragraph 8 is marketed, rented, sold, or occupied, Spring Valley will provide the proposed deed restrictions or other legal measures applicable to the Affordable Units to HUD for its review. HUD will have a period of 30 days to respond, at HUD's option, and provide appropriate technical assistance and revisions to the extent warranted.

c. If HUD provides responses or objections regarding the deed restrictions or other legal measures within 30 days of its receipt of the proposal, and if Spring Valley and HUD have been unable to reach an agreement with respect to the deed restrictions or other legal measures within 30 days of HUD's response, then the parties will resolve the

7

issue pursuant to the provisions of Section IX (Dispute Resolution and Retention of Jurisdiction).

11.     **Compliance, Monitoring, and Training.**

a.      **Certification.**  The Village will certify annually during the term of this Settlement Agreement that any affordable units developed or rehabilitated using funding provided by HUD, in whole or in part, (i) are consistent with the Rockland County Consolidated Plan and (ii) comply with the Fair Housing Act, Title VI, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Americans with Disabilities Act ("ADA"), and Section 109 of the Housing and Community Development Act of 1974 ("Section 109").

b.      **Monitoring.**  The Village will revise its procedures for monitoring to ensure that grant sub-recipients comply with applicable law, including but not limited to the Fair Housing Act, Title VI, Section 504, the ADA, and Section 109.  The Village will ensure that any contracts with sub-recipients include the contract requirements required by 24 C.F.R. Part 75.

c.      **Training.**  Appropriate personnel from the Village whose duties might reasonably include compliance with this Settlement Agreement will, at least annually, attend all required trainings on fair housing, Title VI, Section 504, the ADA, and Section 109 that are offered by the Rockland County Office of Community Development, and maintain records of attendance at such training.

## V.    CIVIL PENALTY

12.    Pursuant to 42 U.S.C. § 3614(d)(1)(C), Spring Valley shall within 30 days of entry of this Settlement Agreement pay to the United States a civil penalty in the amount of $15,000 pursuant to wiring instructions to be provided by counsel for the United States.

13.    By consenting to entry of this Settlement Agreement, the parties agree that in the event that Spring Valley engages in any future conduct occurring after entry of this Settlement Agreement that leads to a determination of a violation of the Fair Housing Act, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## VI.    REPORTING REQUIREMENTS

14.    **Implementation Plan Report.**  The Village will submit a written Implementation Plan Report to HUD within 180 days after the date of entry of the Settlement Agreement that specifies the manner in which the Village will proceed with implementation of the provisions in this Settlement Agreement.  The Report must be in writing and detail the geographic distribution and characteristics of proposed Affordable Units to be developed and/or rehabilitated for HUD's review and approval.  The Report shall include benchmarks for the construction and rehabilitation of the Affordable Units and other provisions of this Settlement Agreement and specify steps and activities that will be needed to meet those benchmarks.  HUD will have a period of 30 days to respond, at HUD's option, and provide appropriate technical assistance and revisions to the extent warranted.  If HUD provides responses or objections regarding the deed restrictions or other legal measures within 30 days of its receipt of the proposal, and if Spring Valley and HUD have been unable to reach an agreement with respect to the deed restrictions or other legal measures within 30 days of HUD's response, then the parties

9

will resolve the issue pursuant to the provisions of Section IX (Dispute Resolution and Retention of Jurisdiction).

15.     **Semiannual Reports.**  Until the completion of all requirements set forth in Section IV (Remedial Actions), above, Spring Valley shall submit semiannual reports on April 15 and October 15 of each year.  The semiannual reports shall include, at a minimum:

a.     A description of the actions taken by Spring Valley to comply with this Settlement Agreement, including the completion of any obligations pursuant to Section IV (Remedial Actions); the status of development or rehabilitation efforts; the status of efforts to develop marketing plans and deed restrictions for approval; and any problems encountered or anticipated, together with implemented or proposed solutions.

b.     A description of any violation of any requirement of this Settlement Agreement, and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to correct that violation, or to prevent future non-compliance.

c.     A description of, and copies of, all complaints Spring Valley has received concerning any alleged violation of the Fair Housing Act and/or Title VI during the preceding semiannual period.

16.     **Meetings and Reviews.**  If requested by HUD or Spring Valley, Spring Valley and HUD will meet and confer to review progress in implementing the Settlement Agreement on a semiannual basis each year during the term of the Settlement Agreement.

### VII.    RECORDKEEPING AND INSPECTION OF RECORDS

17.     During the term of this Settlement Agreement, Spring Valley will maintain records sufficient to document its efforts to meet its obligations under the Settlement Agreement.

18.     In accordance with HUD regulations, Spring Valley will maintain sufficient records to enable HUD to determine whether it is in compliance with regulatory requirements, including the records set forth in 24 C.F.R. § 570.506(g).

19.     During the term of the Settlement Agreement, upon reasonable notice by counsel for the United States to counsel for the Village, the Village shall permit representatives of the United States and/or HUD to inspect and copy all records of the Village related to its compliance with the provisions of this Settlement Agreement.

## VIII.  NOTICE

20.     **Public Notice.**  Within 30 days after the date of entry of this Settlement Agreement, Spring Valley shall notify the public of this Settlement Agreement by publishing the text of the Settlement Agreement by (1) posting this Settlement Agreement for no fewer than 180 days in the Village's main office, and (2) posting this Settlement Agreement on the Village's website, https://www.villagespringvalley.org, for no fewer than 180 days.  In addition, the Village will provide a copy of the Settlement Agreement to any person upon request.

21.     **Notice to Village Officials.**  Within 30 days after the date of entry of this Settlement Agreement, the Village shall provide a copy of this Settlement Agreement to the Board of Trustees of the Village of Spring Valley and to all officers, employees, and agents of the Village whose duties might reasonably include compliance with any provision of this Settlement Agreement.  In the event that new persons are elected or appointed to these positions during the term of this Settlement Agreement, a copy of the Settlement Agreement shall be provided to such persons by the Village promptly after they take office.

## IX.   DISPUTE RESOLUTION AND RETENTION OF JURISDICTION

22.   **Informal Dispute Resolution.**  The parties to this Settlement Agreement agree to use their best efforts to effectuate the purposes of the Settlement Agreement and to resolve informally any differences regarding interpretation of and compliance with the Settlement Agreement, as well as any party's reasonable requests to modify the schedule for performance or other requirements of Section IV (Remedial Actions).

23.   If the parties have been unable to reach an agreement with respect to the issue in dispute within 60 days of the parties' first written communication regarding the dispute, then the parties shall request mediation through the Court or through a mediator or mediation organization mutually acceptable to both parties, with costs to be equally shared.

24.   **Judicial Dispute Resolution.**  If the parties have been unable to resolve all remaining issues within 60 days through mediation and negotiation, then the parties may seek judicial dispute resolution before the Court.  A party may request judicial review of the dispute by filing with the Court and serving on the other parties a pre-motion requesting a conference regarding a judicial resolution of the dispute, or otherwise as required pursuant to the Court's Individual Practices or other orders of the Court.  The Court will make the ultimate determination whether a party's position regarding the dispute complies with the Settlement Agreement and better furthers the objectives of the Settlement Agreement, and/or whether to permit any modification of the terms of the Settlement Agreement.

25.   The Court shall retain jurisdiction for the duration of this Settlement Agreement to enforce the terms of this Settlement Agreement and to resolve any disputes arising under this Settlement Agreement.

26.     In the event of a failure by any party to perform in a timely manner any act required by this Settlement Agreement or otherwise to act in conformance with any provision thereof, a party may move the Court to impose any remedy authorized at law or equity, including but not limited to an order requiring performance of such act or deeming such act to have been performed.

### X.     EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS

27.     This Settlement Agreement resolves only the civil claims of the United States against Spring Valley asserted in the complaint in this action through the date of entry of this Settlement Agreement, all counterclaims against the United States that Spring Valley asserted in its answer, and all affirmative defenses that Spring Valley asserted as to the United States' claims in its answer.  This Settlement Agreement does not directly or indirectly alter or otherwise change any of the claims of either the United States or Spring Valley against Rockland County, nor any of the claims of Rockland County against the United States or Spring Valley.

28.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Settlement Agreement.

29.     This Settlement Agreement shall not be construed to limit the rights of the United States or of HUD to enforce, to obtain injunctive relief, or to obtain penalties, under the Fair Housing Act, Title VI, or their implementing regulations, or under other federal, state, or local laws or regulations, except as expressly stated in Paragraph 27.

30.     This Settlement Agreement does not affect any obligation of Rockland County or Spring Valley to comply with all requirements of the Fair Housing Act and Title VI not addressed in the Settlement Agreement.

13

## XI.   INTEGRATION AND MODIFICATION

31.     This Settlement Agreement contains the entire agreement between the United States and Spring Valley.  No statements, representations, promises, agreements, or negotiations, oral or otherwise, between the parties or their counsel that are not included herein shall be considered part of this Settlement Agreement or of any force or effect.

32.     This Settlement Agreement may be modified only in writing and with the written consent of the parties and approval of the Court, or otherwise pursuant to the provisions of Section IX (Dispute Resolution and Retention of Jurisdiction).

## XII.   EXECUTION OF SETTLEMENT AGREEMENT

33.     Each undersigned representative of the United States and Spring Valley certifies that he or she is fully authorized to enter into the terms and conditions of this Settlement Agreement and to execute and legally bind the party he or she represents to this Settlement Agreement.

34.     This Settlement Agreement may be executed in counterparts, each of which shall be an original and shall constitute one and the same instrument.

## XIII.  COSTS AND ATTORNEY'S FEES

35.     Each party shall bear its own costs and attorney's fees in this action.

## XIV.  PARTIAL FINAL JUDGMENT

36.     Upon approval and entry of this Settlement Agreement by the Court, this Settlement Agreement shall constitute a final judgment of the Court as to the United States and Spring Valley.

37.     In light of the circumstances of this proceeding, in particular because the United States and Spring Valley have agreed to resolve the claims the United States asserted against

14

Spring Valley, and all counterclaims Spring Valley asserted in its answer, but neither party has resolved any claims by or against Rockland County, the Court determines in the exercise of its discretion, and in the interests of sound judicial administration and efficiency, that there is no just reason for delay and directs the entry of this partial final judgment pursuant to Fed. R. Civ. P. 54(b).

SO ORDERED.

_____  _____
CATHY SEIBEL, U.S.D.J.

Dated:  March 4, 2026
         White Plains, New York

15

AGREED TO BY:

**For the United States of America:**

Dated: February 27, 2026
New York, New York

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:

SAMUEL DOLINGER
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677
samuel.dolinger@usdoj.gov

**For the Village of Spring Valley:**

Dated: February 27, 2026
Spring Valley, New York

VILLAGE OF SPRING VALLEY

By:

Schenley Vital
Mayor of Spring Valley

Dated: February 27, 2026
Pearl River, New York

Matthew W. Lizotte
Matthew W. Lizotte, Esq.
Law Offices of Matthew W. Lizotte
1 Blue Hill Plaza, Suite 1509
Pearl River, New York 10965
Tel: (845) 414-3331
mlizotte@lizotte-law.com

Dennis E. A. Lynch, Esq.
Savad Churgin, LLP
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
Tel.: (845) 729-5744
dennislynchesq@gmail.com

*Attorneys for the Village of Spring Valley*

16