**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

               Plaintiff,

     v.

ROCKLAND COUNTY and VILLAGE OF
SPRING VALLEY,

               Defendants.

No. 25 Civ. 507 (CS)

**SETTLEMENT AGREEMENT**
**BETWEEN THE UNITED STATES**
**AND THE COUNTY OF ROCKLAND**

WHEREAS, Plaintiff the United States of America ("United States"), on behalf of the U.S. Department of Housing and Urban Development ("HUD") filed a complaint on January 17, 2025, against defendants Rockland County, New York ("the County of Rockland" or the "County") and the Village of Spring Valley, New York ("Spring Valley" or the "Village," and together with the County, "Defendants"), alleging that Defendants have breached a Voluntary Compliance Agreement and Conciliation Agreement (the "VCA") with HUD, in violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act"), 42 U.S.C. §§ 3610(c) and 3614(b)(2);

WHEREAS, HUD entered into the VCA with the County and Spring Valley in March 2018, and the parties to the VCA subsequently amended it in February 2021;

WHEREAS, the VCA resolved HUD's investigation of administrative complaints regarding, *inter alia*, whether the County and Spring Valley failed to monitor and correct the allegedly discriminatory practices of a private developer that built 62 condominium units on property that had been acquired by Spring Valley using HUD grant funding, where the private developer allegedly designed and marketed the relevant units in a discriminatory manner;

WHEREAS, the VCA required the County and Spring Valley to develop or rehabilitate a total of 62 affordable housing units meeting specified criteria by deadlines set forth in the VCA, and subject to affirmative marketing and affordability requirements, alongside other requirements;

WHEREAS, the County contends that HUD failed to meet with it annually as required under the VCA to discuss whether modifications and/or amendments were warranted to advance the ultimate goals of the agreement;

WHEREAS, the United States and Spring Valley agreed to settle the claims of the United States against Spring Valley, and the counterclaims of Spring Valley against the United States, by agreement so-ordered by the Court on March 4, 2026, Dkt. No. 35;

WHEREAS, the United States and the County, desiring to settle this action and to avoid protracted, expensive, and unnecessary litigation, agree to the entry of this Settlement Agreement to resolve all claims that the United States asserted against the County in its complaint, and all affirmative defenses that the County asserted as to the United States' claims in its answer;

WHEREAS, the County and Spring Valley, desiring to discontinue, without prejudice, the remaining claims between them to bring this action to a close, agree as part of this Settlement Agreement to discontinue, without prejudice, all cross-claims by the County against Spring Valley and by Spring Valley against the County, and Spring Valley is a signatory to this Settlement Agreement solely for purposes of effectuating such discontinuance, without prejudice; and

WHEREAS, the United States and the County recognize that this Settlement Agreement has been negotiated by the United States and the County in good faith and will avoid litigation among the parties hereto; that this Settlement Agreement is a fair and reasonable settlement of the claims asserted by the United States against the County, as specifically set forth in the complaint; and that this Settlement Agreement is fair, reasonable, and in the public interest;

2

NOW, THEREFORE, the United States and the County of Rockland hereby agree as follows:

## I.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(b)(2), and personal jurisdiction over the parties to this action.

2.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants reside in this district.  For purposes of this Settlement Agreement, or any action or proceeding to enforce this Settlement Agreement, the parties consent to venue in the Southern District of New York and to this Court's jurisdiction over this Settlement Agreement and over any such action or proceeding.

## II.    APPLICABILITY

3.    The obligations of this Settlement Agreement apply to and are binding upon the County and upon the United States, and all of their officers, trustees, directors, agents, employees, heirs, successors and assigns, when acting in their official capacities.

4.    These obligations are binding irrespective of changes in elected officials or other personnel, including the officials who serve as the County's Executive and/or Community Development Administrator, during the term of this Settlement Agreement.

## III.    FACTUAL STIPULATIONS

5.    The parties agree to the following factual stipulations:

a.    The County knowingly and voluntarily entered into the VCA in 2018, and agreed to its amendment in 2021.

3

b.      The VCA included interim deadlines that required, *inter alia*, that the County and Spring Valley complete approximately 25 of the affordable units within the first three years of the VCA. Only four qualifying affordable units were completed between 2018 and 2021.

c.      The 2021 amendment of the VCA extended the deadlines for the County and Spring Valley to develop the 58 remaining affordable housing units as required under the VCA.  No additional qualifying units were completed after the 2021 amendment.

## IV.    REMEDIAL ACTIONS

6.      **Compliance with the Fair Housing Act.**  The County and each of its officers, employees, agents, successors, and assigns agree to comply with the Fair Housing Act, 42 U.S.C. § 3604.

7.      **Compliance with Title VI.**  The County and each of its officers, employees, agents, successors, and assigns agree to comply with the Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI").

8.      **Provision of Affordable Housing Units**. Within five years of the date of entry of this Settlement Agreement, the County shall reasonably ensure the development and/or rehabilitation of affordable housing units terms that meet the terms and conditions set forth in Paragraphs 8 through 10 of this Settlement Agreement ("Affordable Units") as follows:

a.      The County will reasonably ensure the development and/or rehabilitation of at least 36 Affordable Units for rental at a particular development site within the County, which has been identified to HUD by the County (the "Development Site"). The Affordable Units for rental shall be affordable to and occupied by households with incomes at or below 60% of the Area Median Income ("AMI") for Rockland County.

b.    If the County is unable to complete the Affordable Units at the Development Site, it may instead reasonably ensure the development and/or rehabilitation of at least 36 alternate Affordable Units elsewhere in the County.  If such alternate Affordable Units are for rental, they shall be affordable to and occupied by households with incomes at or below 60% of the AMI for Rockland County.  If such Affordable Units are for homeownership, they shall be affordable to and occupied by households with incomes at or below 80% of the AMI for Rockland County.

c.    If the Affordable Units are completed at the Development Site pursuant to Paragraph 8(a), the Affordable Units for rental will be subject to the rental limitations set forth in Exhibit G to the applicable New York State and Federal Low-Income Housing Tax Credit Regulatory Agreement dated December 19, 2025 ("LIHTC Regulatory Agreement").  If the Affordable Units are completed elsewhere in the County pursuant to Paragraph 8(b), any Affordable Units for rental are subject to the rent limitations for HOME-assisted units set forth in 24 C.F.R. § 92.252(a) and (b) or a similar regulatory agreement, such as a LIHTC regulatory agreement applicable to the project in question.

d.    The Affordable Units will be completed pursuant to the following schedule:

i. By October 15, 2026, the County will provide a status report on the progress of the project underway at the Development Site.  At that time, the County will make best efforts to notify HUD, based on facts known to the County as of that date, whether the County intends to reasonably ensure the development and/or rehabilitation of at least 36 Affordable Units at the Development Site pursuant to Paragraph 8(a), or whether it will instead reasonably ensure the development and/or rehabilitation of

at least 36 alternate Affordable Units elsewhere in the County pursuant to Paragraph 8(b).

ii. If the County proceeds with ensuring the development and/or rehabilitation of at least 36 Affordable Units at the Development Site pursuant to Paragraph 8(a), it will use best efforts to ensure that the project at the Development Site meets the following milestones:

1. April 15, 2027: substantial completion of building foundation work.

2. April 15, 2028: substantial completion of building superstructure and façade work.

3. April 15, 2029: substantial completion of interior finishing work.

4. April 15, 2030: substantial completion of construction work.

5. April 15, 2031: full completion of 36 Affordable Units and issuance of Certificate of Occupancy.

iii. If the County provides notice pursuant to paragraph 8(d)(i) that it intends to proceed with ensuring the development and/or rehabilitation of at least 36 alternate Affordable Units elsewhere in the County pursuant to Paragraph 8(b), the County will provide, by April 15, 2027, or within a reasonable time thereafter, a schedule of similar milestones for items (1) through (5) in subparagraph (ii), with dates aimed at ensuring completion within five years of the date of entry of this Settlement Agreement.

e.    All Affordable Units will be subject to marketing requirements as set forth in Paragraph 9, and controlled by deed restrictions or other legal measures as set forth in Paragraph 10.

f.    If the Affordable Units are completed at the Development Site pursuant to Paragraph 8(a), a proportion of the Affordable Units (as set forth in the LIHTC Regulatory Agreement) will meet or exceed the requirements for fully accessible and adapted move-in ready units pursuant to the accessibility requirements of the New York State Homes and Community Renewal ("HCR") Design Guidelines, which in turn incorporate standards from Section 504 of the Rehabilitation Act and the Uniform Federal Accessibility Standards ("UFAS").  If the Affordable Units are completed elsewhere in the County pursuant to Paragraph 8(b), the Affordable Units will be constructed or converted to be accessible to persons with disabilities in conformance with the UFAS and/or the standards set forth in the HUD rule entitled Nondiscrimination on the Basis of Disability in Federally Assisted Programs and Activities, 79 Fed. Reg. 29,671 (May 23, 2014), or a similar regulatory agreement that meets or exceeds these requirements.

g.    HUD reserves the right to conduct periodic on-site reviews, at least annually, at the Development Site and/or any other projects containing Affordable Units to ensure compliance with this Settlement Agreement, at HUD's discretion.

h.    The County will hold semiannual progress meetings during construction at the Development Site and/or any other projects containing Affordable Units, which shall include representatives from the County and the developer/construction manager, with sufficient advance notice to HUD to allow representatives of HUD to participate at HUD's

option. If HUD does not respond to such notice or declines to attend or participate in such meetings, the County may proceed with such meetings as scheduled.

9.      **Marketing Requirements for Affordable Units.**

a.      Before any Affordable Units are marketed, rented, sold, or occupied, the County will submit to HUD the marketing plan that has been approved by HCR ("the Marketing Plan") for the Development Site to encourage the participation of eligible persons without regard to race, color, national origin, sex, religion, familial status, or disability, with respect to each group of Affordable Units.  HUD agrees that the HCR-approved Marketing Plan for the Development Site shall be deemed adequate for purposes of this Settlement Agreement.

b.      If the Affordable Units are completed elsewhere in the County pursuant to Paragraph 8(b), then the County will provide the proposed marketing plan for HUD's review before commencement of marketing activities.  HUD will have a period of 30 days to respond, at HUD's option, and provide appropriate technical assistance and revisions to the extent warranted. If HUD does not respond to such Marketing Plan within the 30-day period, then the Marketing Plan shall be deemed approved, as submitted.

c.      If HUD provides responses or objections regarding the proposed marketing plan within 30 days of its receipt of the proposal, and if the County and HUD have been unable to reach an agreement with respect to the proposed marketing plan within 30 days of HUD's response, then the parties will resolve the issue pursuant to the provisions of Section IX (Dispute Resolution and Retention of Jurisdiction).

10.     **Deed Restrictions or Similar Measures for Affordable Units.**

a.      All Affordable Units subject to this Settlement Agreement, whether for homeownership or for rental, shall be subject to deed restrictions, regulatory agreements, or other legal measures to ensure that they remain affordable to and occupied by eligible households for at least 50 years.  The deed restriction, restrictive covenant, or regulatory agreement must include the affordability requirements (including AMI restrictions and the length of the term of affordability) attached to the relevant Affordable Units as set forth under Paragraph 8.

b.      Before each of the projects listed in Paragraph 8 are marketed, rented, sold, or occupied, the County will provide the proposed deed restrictions, regulatory agreements, or other legal measures applicable to the Affordable Units, both for homeownership and for rental, to HUD for its review (to the extent, if any, that such deed restrictions, regulatory agreements, or other legal measures have not already been provided to HUD as of the date of this Agreement).  HUD agrees that the regulatory agreements in place for the Development Site as of the date of this Settlement Agreement, including the LIHTC Regulatory Agreement, shall be deemed adequate for purposes of this Settlement Agreement and consistent with the affordability requirements (including AMI restrictions and the length of the term of affordability) attached to the relevant Affordable Units as set forth under Paragraph 8.

c.      If the Affordable Units are completed elsewhere in the County pursuant to Paragraph 8(b), then HUD will have a period of 30 days to respond, at HUD's option, to the proposed deed restrictions, regulatory agreements, or other legal measures applicable to the Affordable Units and provide appropriate technical assistance and revisions to the

extent warranted. If HUD does not respond to such proposed deed restrictions or other legal measures within the 30-day period, then they shall be deemed approved, as submitted.

d.      If HUD provides responses or objections regarding the deed restrictions or other legal measures within 30 days of its receipt of the proposal, and if the County and HUD have been unable to reach an agreement with respect to the deed restrictions or other legal measures within 30 days of HUD's response, then the parties will resolve the issue pursuant to the provisions of Section IX (Dispute Resolution and Retention of Jurisdiction).

11.      **Modification of Policies, Training, and Monitoring for Grant Sub-Recipients**.

a.      **Community Development Block Grant ("CDBG") Policy and Procedure Manual**.  The County will continue to include language in its CDBG Policy and Procedure Manual that informs grant sub-recipients that proposed projects must be consistent with the Rockland County Consolidated Plan, and must also comply with the Fair Housing Act, including 42 U.S.C. § 3608(d); Title VI; Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and Section 109 of the Housing and Community Development Act of 1974, and these requirements will be incorporated in the County's annual monitoring of all sub-recipients.

b.      **Training.**  The County will continue to require training on fair housing, Title VI, and Section 109 of the Housing and Community Development Act of 1974 for all sub-recipients, with such training to be completed prior to any transmission of CDBG and HOME funds by the County.  The County will provide this training at least annually,

with the first training to take place within 180 days of the date of entry of the Settlement Agreement.

      c.    **Monitoring.**  The County represents that it has revised its procedures for monitoring, including the CDBG monitoring checklist, to ensure that sub-recipients comply with applicable law, including but not limited to the Fair Housing Act and 42 U.S.C. § 3608(d), Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, Section 109 of the Housing and Community Development Act of 1974, and Title VI, and will continue to apply the monitoring procedures, as revised, during the term of this Agreement.

      d.    **Sub-Recipient Agreements.**  The County will ensure that all sub-recipient contracts include the contract requirements required by 24 C.F.R. Part 75.

12.    **Training for Office of Community Development Staff.**  The County will require training on fair housing, Title VI, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and Section 109 of the Housing and Community Development Act of 1974 for staff of the Rockland County Office of Community Development.  The County will provide this training at least annually, with the first training to take place within 180 days of entry of the Settlement Agreement.

## V.    CIVIL PENALTY

13.    Pursuant to 42 U.S.C. § 3614(d)(1)(C), the County shall within 30 days of entry of this Settlement Agreement pay to the United States a civil penalty in the amount of $10,000, in full satisfaction of any and all claims for a civil penalty that were or could have been asserted by the United States as against the County in this lawsuit.

## VI.     REPORTING REQUIREMENTS

14.     **Implementation Plan Report.**  The County will submit a written Implementation Plan Report to HUD within 180 days after the date of entry of the Settlement Agreement that specifies the manner in which the County will proceed with implementation of the provisions in this Settlement Agreement.  The Report must be in writing and detail the geographic distribution and characteristics of proposed Affordable Units for homeownership and rental to be developed and/or rehabilitated for HUD's review and approval.  The Report shall include benchmarks for the construction and rehabilitation of the Affordable Units and other provisions of this Settlement Agreement and specify steps and activities that will be needed to meet those benchmarks.

15.     **Semiannual Reports.**  Until the termination of this Agreement pursuant to Section XI (Termination), the County shall submit semiannual reports on April 15 and October 15 of each year.  The semiannual reports shall include, at a minimum:

a.     A description of the actions taken by the County to comply with this Settlement Agreement, including the completion of any obligations pursuant to Section IV (Remedial Actions); the status of development or rehabilitation efforts; the status of efforts to develop marketing plans and deed restrictions for approval; and any problems encountered or anticipated, together with implemented or proposed solutions.

b.     A description of any violation of any requirement of this Settlement Agreement, and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to correct that violation, or to prevent future non-compliance.

c.     Appropriately redacted copies of any complaints made to the County concerning any alleged violation of the Fair Housing Act and/or Title VI during the

12

preceding semiannual period, where such complaints were made in writing and contain non-frivolous allegations.

16.     **Meetings and Reviews.**  If requested by HUD, the County will meet and confer with HUD to review its progress in implementing the Settlement Agreement on a semiannual basis each year during the term of the Settlement Agreement.

## VII.    RECORDKEEPING AND INSPECTION OF RECORDS

17.     During the term of this Settlement Agreement, the County will maintain records sufficient to document its efforts to meet its obligations under the Settlement Agreement.

18.     In accordance with CDBG regulations, the County will maintain sufficient records to enable HUD to determine whether it is in compliance with regulatory requirements, including the records set forth in 24 C.F.R. § 570.506(g).

19.     During the term of the Settlement Agreement, upon reasonable notice by counsel for the United States to counsel for the County, the County shall permit representatives of the United States and/or HUD to inspect and copy all records of the County related to its compliance with the provisions of this Settlement Agreement.

20.     The obligations in this Section VII (Recordkeeping and Inspection of Records) will terminate upon the termination of this Agreement pursuant to Section XI (Termination).

## VIII.   NOTICE

21.     **Public Notice.**  Within 30 days after the date of entry of this Settlement Agreement, the County shall notify the public of this Settlement Agreement by publishing the text of the Settlement Agreement by (1) posting this Settlement Agreement for no fewer than 180 days in the County's main office, and (2) posting this Settlement Agreement on the County's website,

https://www.rocklandcountyny.gov, for no fewer than 180 days. In addition, the County will provide a copy of the Settlement Agreement to any person upon request.

22.    **Notice to County Officials.** Within 30 days after the date of entry of this Settlement Agreement, the County shall provide a copy of this Settlement Agreement to the Office of the County Executive of the County of Rockland and to all officers, employees, and agents of the County whose duties might reasonably include compliance with any provision of this Settlement Agreement. In the event that new persons are elected or appointed to these positions during the term of this Settlement Agreement, a copy of the Settlement Agreement shall be provided to such persons by the County promptly after they take office.

## IX.    DISPUTE RESOLUTION AND RETENTION OF JURISDICTION

23.    **Informal Dispute Resolution.** The parties to this Settlement Agreement agree to use their best efforts to effectuate the purposes of the Settlement Agreement and to resolve informally any differences regarding interpretation of and compliance with the Settlement Agreement, as well as any party's reasonable requests to modify the schedule for performance or other requirements of Section IV (Remedial Actions).

24.    If the parties have been unable to reach an agreement with respect to the issue in dispute within 60 days of the parties' first written communication regarding the dispute, then the parties shall request mediation through the Court or through a mediator or mediation organization mutually acceptable to both parties, with costs to be equally shared.

25.    **Judicial Dispute Resolution.** If the parties have been unable to resolve all remaining issues within 60 days through mediation and negotiation, then the parties may seek judicial dispute resolution before the Court. A party may request judicial review of the dispute by filing with the Court and serving on the other parties a pre-motion requesting a conference

14

regarding a judicial resolution of the dispute, or otherwise as required pursuant to the Court's Individual Practices or other orders of the Court. The Court will make the ultimate determination whether a party's position regarding the dispute complies with the Settlement Agreement and better furthers the objectives of the Settlement Agreement, and/or whether to permit any modification of the terms of the Settlement Agreement.

26. The Court shall retain jurisdiction for the duration of this Settlement Agreement to enforce the terms of this Settlement Agreement and to resolve any disputes arising under this Settlement Agreement.

27. In the event of a failure by any party to perform in a timely manner any act required by this Settlement Agreement or otherwise to act in conformance with any provision thereof, a party may move the Court to impose any remedy authorized at law or equity, including but not limited to an order requiring performance of such act or deeming such act to have been performed.

## X. EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS

28. This Settlement Agreement resolves only the civil claims of the United States against the County asserted in the complaint in this action through the date of entry of this Settlement Agreement, and all affirmative defenses that the County asserted as to the United States' claims in its answer.

29. The cross-claims asserted by and between the County and Spring Valley are hereby discontinued, without prejudice.

30. The United States and the County reserve all legal and equitable remedies available to enforce the provisions of this Settlement Agreement.

31. This Settlement Agreement shall not be construed to limit the rights of the United States or of HUD to enforce, to obtain injunctive relief, or to obtain penalties, under the Fair

Housing Act, Title VI, or their implementing regulations, or under other federal, state, or local laws or regulations, except as expressly stated in Paragraph 28.

32.     This Settlement Agreement does not affect any obligation of the County or Spring Valley to comply with all requirements of the Fair Housing Act and Title VI not addressed in the Settlement Agreement.

## XI.    TERMINATION

33.     Once the County has completed all requirements set forth in Section IV (Remedial Actions), made the payment required by Section V (Civil Penalty), and maintained compliance with Section VI (Reporting Requirements), Section VII (Recordkeeping and Inspection of Records), and Section VIII (Notice), the County may serve upon the United States, in care of the Chief, Civil Rights Unit, U.S. Attorney's Office for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, New York 10007, a request for termination, stating that the County has satisfied those requirements, together with all necessary supporting documentation.

34.     Following receipt by the United States of the County's request for termination, the parties shall confer informally concerning the request and any disagreement that the parties may have as to whether the County has satisfactorily complied with the requirements for termination of this Agreement.  If the United States agrees that the Agreement may be terminated, or if the United States fails to object to such termination within 60 days of receipt of the County's request for termination, then the County may submit, for the Court's approval, a proposed order terminating the Agreement.

35.     If the United States provides written notice that it does not agree that the Agreement may be terminated, the County may invoke Dispute Resolution under Section IX.

However, the County shall not seek dispute resolution of any dispute regarding termination until at least 30 days after service of its request for termination.

## XII.    INTEGRATION AND MODIFICATION

36.    This Settlement Agreement contains the entire agreement between the United States and the County of Rockland.  No statements, representations, promises, agreements, or negotiations, oral or otherwise, between the parties or their counsel that are not included herein shall be considered part of this Settlement Agreement or of any force or effect.

37.    This Settlement Agreement may be modified only in writing and with the written consent of the parties and approval of the Court.

## XIII.    EXECUTION OF SETTLEMENT AGREEMENT

38.    Each undersigned representative of the United States and the County of Rockland certifies that he or she is fully authorized to enter into the terms and conditions of this Settlement Agreement and to execute and legally bind the party he or she represents to this Settlement Agreement.

39.    This Settlement Agreement may be executed in counterparts, each of which shall be an original and shall constitute one and the same instrument.

## XIV.    COSTS AND ATTORNEY'S FEES

40.    Each party shall bear its own costs and attorney's fees in this action.

## XV.    FINAL JUDGMENT

41.    Upon approval and entry of this Settlement Agreement by the Court, this Settlement Agreement shall constitute a final judgment of the Court, the case shall be closed, and all pending deadlines shall be canceled.

AGREED TO BY:

**For the United States of America:**

Dated: May *13*, 2026
       New York, New York

                                    JAY CLAYTON
                                    United States Attorney for the
                                    Southern District of New York
                                    *Attorney for the United States of America*

By:    _____
              David J. Kennedy
              Samuel Dolinger
              Assistant United States Attorneys
              86 Chambers Street, 3rd Floor
              New York, New York 10007
              Tel.: (212) 637-2677/2733
              samuel.dolinger@usdoj.gov
              david.kennedy2@usdoj.gov

**For the County of Rockland:**

Dated: May __, 2026
       New City, New York

                                      THE COUNTY OF ROCKLAND

By:    _____
              Edwin J. Day
              County Executive, County of Rockland

Dated: May __, 2026
       White Plains, New York

                                      BLEAKLEY PLATT & SCHMIDT, LLP
                                    *Attorneys for the County of Rockland*

By:    _____
              Susan E. Galvão
              Adam Rodriguez
              David Chen
              One North Lexington Avenue
              White Plains, New York 10601
              Tel.: (914) 287-6193
              sgalvao@bpslaw.com
              arodriguez@bpslaw.com
              dchen@bpslaw.com

AGREED TO BY:

**For the United States of America:**

Dated: May __, 2026
        New York, New York

                      JAY CLAYTON
                      United States Attorney for the
                      Southern District of New York
                      *Attorney for the United States of America*

By:        _____

                      David J. Kennedy
                      Samuel Dolinger
                      Assistant United States Attorneys
                      86 Chambers Street, 3rd Floor
                      New York, New York 10007
                      Tel.: (212) 637-2677/2733
                      samuel.dolinger@usdoj.gov
                      david.kennedy2@usdoj.gov

**For the County of Rockland:**

Dated: May 18, 2026
        New City, New York

                      THE COUNTY OF ROCKLAND

By:        _____
                      Edwin J. Day
                      County Executive, County of Rockland

Dated: May 18, 2026
        White Plains, New York

                      BLEAKLEY PLATT & SCHMIDT, LLP
                      *Attorneys for the County of Rockland*

By:        _____
                      Susan E. Galvão
                      Adam Rodriguez
                      David Chen
                      One North Lexington Avenue
                      White Plains, New York 10601
                      Tel.: (914) 287-6193
                      sgalvao@bpslaw.com
                      arodriguez@bpslaw.com
                      dchen@bpslaw.com

18

**For the Village of Spring Valley (as to discontinuance of cross-claims only ¶ 29):**

Dated: May 13, 2026
      Pearl River, New York

                                    *Matthew W. Lizotte*
                                    Matthew W. Lizotte, Esq.
                                    Law Offices of Matthew W. Lizotte
                                    1 Blue Hill Plaza, Suite 1509
                                    Pearl River, New York 10965
                                    Tel: (845) 414-3331
                                    mlizotte@lizotte-law.com

SO ORDERED:

*Cathy Seibel*
HON. CATHY SEIBEL
United States District Judge

Dated:    May 19, 2026
White Plains, New York

The Clerk shall close the case.

19